## LOUISVILLE & NASHVILLE RAILROAD COMPANY *v.* SOUTHERN FLOUR & GRAIN COMPANY.

1. Where a carrier accepts a shipment of freight to a place on its own line of railroad, and stipulates in its bill of lading that "the company agrees to carry said property to destination if on its road," and enters on the bill of lading, after the designation of the property, "C/o. W. A.," which characters when endorsed on the bill of lading are proved to mean "in care of the Western and Atlantic Railroad Company," such bill of lading will be construed to mean that the receiving carrier obligates to transport the shipment over its own road to destination and there to deliver it to the Western and Atlantic Railroad Company for the benefit of the consignee, and not to mean a delivery of the shipment at a junction point outside of the place of destination to the Western & Atlantic Railroad Company to be transported to destination by the latter company.

2. Abbreviations and technical terms in written instruments create such an ambiguity that they may be explained by parol testimony.

3. A carrier who promptly transports goods according to his contract is entitled to his reasonable carriage charges, and the consignee is not entitled to recover the goods in an action of trover where he refuses to pay such charges.

JULY 11, 1911.

Trover. Before Judge Pendleton. Fulton superior court. June 25, 1910.

*Tye, Peeples & Jordan,* for plaintiff in error.

*Walter McElreath,* contra.

EVANS, P. J.   The Louisville and Nashville Railroad Company operates a continuous line of railway between Lexington, Kentucky, and Atlanta, Georgia. On January 1, 1909, W. Z. Thompson turned over to the railway company at Lexington a car-load of hay, and the railroad company issued a bill of lading for the shipment. By the terms of the bill of lading the shipment was consigned to the shipper's order, with direction to notify Southern Flour and Grain Company, Atlanta, Georgia. After the designation of the articles shipped in the bill of lading appears the following: "C/o. W. A." The bill of lading issued to the consignor contained the following covenant: "The company agrees to carry said property to destination, if on its road; if said destination is not on its road and the company guarantees a through rate to destination, then it agrees to deliver said property to such other carrier on the route to destination as the company may select, but it does not agree to carry to any point beyond its own line, or be responsible beyond

its own line in any manner under any circumstances." The hay was duly transported by the Louisville and Nashville Railroad Company, and the Southern Flour and Grain Company was notified on its arrival at Atlanta, Georgia. The Southern Flour and Grain Company refused to pay the freight charges, because the shipment did not arrive in Atlanta over the Western and Atlantic Railroad Company, and demanded possession of the hay. The Louisville and Nashville Railroad Company offered to turn the shipment over to the Western and Atlantic Railroad Company. The Southern Flour and Grain Company refused to accept delivery in this way, and brought an action in trover to recover the hay. Under the stipulations made on the trial of the case the only issue between the parties was whether there had been a conversion of the hay by the railway company because of an alleged diversion in the routing of the shipment. The plaintiff contended that according to the bill of lading the defendant contracted to deliver the shipment to the Western and Atlantic Railroad Company at a point outside of Atlanta; and in support of this contention offered the testimony of its president as follows: " 'C/o. W. & A.' on that bill of lading, I know what they stand for. In the trade of shipping, business of shipping over railroads, in making out bills of lading, I would say that that term would mean that the shipment would arrive by the W. & A. Railroad. I know in railroad parlance, as such words are used on bills of lading, what the words 'C/o.' mean. They mean care of and via. 'Via' means in railroad parlance by way of. 'By way of' indicates, as to the routing of the shipment, that the routing shall be designated after the character and shall arrive over the road mentioned after the character. There is a railroad coming into Atlanta known as the Western and Atlantic Railroad; the words 'W. & A.' on bills of lading mean Western and Atlantic R. R. It is usually abbreviated just like that." On cross-examination he testified: "I should say from experience that C/o. meant care of." No witness, other than the president of the plaintiff company, testified concerning the meaning of the symbols C/o. W. A. The contract of shipment provided that the carrier should deliver the hay at destination if on its road; and this stipulation must govern the contract, unless it is modified by the endorsement of these characters on it. The theory upon which parol testimony is allowed in such cases is

that symbols of trade having a definite meaning may be interpreted and the interpretation becomes a part of the writing. The interpretation given to these characters by the plaintiff is that they mean "in care of." It is true that he also indicates that they may sometimes be employed in a different sense. Ordinarily a plaintiff's testimony in his own favor, where the same is of uncertain intendment, should be taken most strongly against him. And this rule should not be relaxed where the purpose of the testimony is to define certain trade symbols in their bearing and effect on the written contract which contains them, and the definition is so dubious and ambiguous as to deprive the characters of any certain and definite effect. We therefore construe the testimony of the plaintiff in harmony with, rather than repugnant to, the provision of the contract respecting delivery at destination, and that the characters mean in care of the Western and Atlantic Railroad Company, and a delivery at Atlanta to the W. & A. R. R. for the benefit of the consignee would have been a good delivery. If the testimony of other witnesses had been introduced as to the meaning of these trade symbols, and there had been a conflict as to their meaning, then it would have been for the jury to determine their proper signification. We are all the more disposed to construe the plaintiff's testimony as we have, in view of the failure of the record to affirmatively disclose that the W. & A. R. R. Co. connects with the initial carrier. This case is altogether unlike the case of *Bird* v. *Georgia Railroad Company, 72 Ga.* 655. In that case the line of railroad of the initial and receiving carrier did not extend to the place to which the shipment was destined. The shipper routed the shipment over a certain line of railroad, and it was so stipulated in the bill of lading. The receiving carrier, instead of delivering it to the connecting carrier designated in the bill of lading, delivered it to another carrier, who transported it to its destination; and the court held that the latter carrier, when it received the shipment with knowledge that it was routed over a different road, was guilty of a conversion, and was not entitled to charge for transportation over its own line, and that the owner could maintain a trover action to recover his goods without tendering or paying the transportation charges claimed by it.

Error is assigned upon the admission of parol evidence to interpret the character "C/o. W. A." on the bill of lading. Parol

evidence is admissible to explain the meaning of abbreviations and technical expressions in written instruments. *Daniel* v. *Maddox-Rucker Banking Company,* 124 *Ga.* 1063 (53 S. E. 573); 1 Cyc. L. & P. 82.

The evidence showing no conversion, on the part of the carrier, the plaintiff was not entitled to recover possession of the freight without paying or tendering the freight charges.

*Judgment reversed. All the Justices concur.*